UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 26-0663 JGB (KESx) | Date | February 17, 2026 |
|---|---|---|---|
| Title | *Mehradad Ghassemi Bakhtiari v. Pamela Bondi, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:**   Order: (1) GRANTING Petitioner's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 2) (IN CHAMBERS)

Before the Court is petitioner Mehrdad Ghassemi Bakhtiari's ex parte application for a temporary restraining order. ("Application," Dkt. No. 2.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Application, the Court **GRANTS** the Application.

## I. BACKGROUND

On February 12, 2026, petitioner Mehrdad Ghassemi Bakhtiari ("Petitioner") filed a verified petition for writ of habeas corpus. ("Petition," Dkt. No. 1.) Petitioner raises the following grounds for relief: unlawful detention in violation of section 706 of the Administrative Procedure Act ("APA"), for failing to comply with 8 C.F.R. §§ 241.13(i)(2) and 241.13(i)(3); (2) unlawful detention in violation of 8 U.S.C. § 1231 and the Due Process Clause of the Constitution; (3) indefinite detention in violation of the Due Process Clause; and (4) violation of Petitioner's Due Process right to counsel. (See Petition.)

That same day, Petitioner filed the instant ex parte application for a temporary restraining order. (Application.) In support of the Application, Petitioner filed a declaration by his counsel, Sabrina Damast ("Damast Decl.," Dkt. No. 2-4), a declaration by Petitioner signed by his counsel ("Bakhtiari Decl," Dkt. No. 2-5), and several exhibits relevant to the Application (Dkt.

Nos. 1-6-12). On the same date, prior to filing the Application, Petitioner's attorney gave notice to counsel for Respondents, Daniel Beck. (Damast Decl. ¶ 4.) Although Beck represented that his office would oppose the Application (id.), an attorney for the Government subsequently submitted a response to Petitioner's Application stating that "Respondents do not have an opposition argument that they are able to present." ("Response," Dkt. No. 7 at 2.)

## II.  FACTS

Petitioner is a citizen of Iran. (Petition ¶ 2.) He has resided in the United States since 1993, when he was brought to the United States as a child. (Id.) He was included on his mother's asylum petition, which was denied by an immigration judge on March 29, 2004. (Id.) An appeal of that petition was denied by the Board of Immigration Appeals and the Ninth Circuit. (Id.) The family was granted voluntary departure, but they did not depart. (Id.) As such, the voluntary departure order converted into an order of removal. (Id.)

In 2012, Petitioner sought assistance from Immigration and Customs Enforcement ("ICE"), inquiring whether he had nay options available to him. (Id. ¶ 3.) He was placed on an order of supervision ("OSUP") and obtained a work permit. (Id.) He was never detained. (Id.) Plaintiff complied with the OSUP continuously until he was detained at an ICE check-in on July 15, 2025. (Id. ¶ 4.) The appointment notice stated its purpose as only "case review." (Id.) Petitioner was transferred to the Adelanto Detention Facility the next day, and has remained detained there ever since. (Id.)

Petitioner was not provided with a Notice of Revocation of Release. (Id. at 5.) He was not asked if there was any reason he should not be detained or deported, nor was he told what circumstances in his case had changed such that revocation would be justified. (Id.) Petitioner does not possess an original Iranian birth certificate, passport, or national identification. (Id.)

On October 8, 2025, ICE conducted a custody review and informed Petitioner that he would continue to be detained because he was deemed a "flight risk" as a result of having a removal order entered against him. (Id. ¶ 7.) That removal order existed at the time he was initially granted OSUP. (Id.) ICE has no particularized evidence that Petitioner could be deported to Iran or any country at the time he was detained, and continues to have no such evidence. (Id. ¶ 8.) Petitioner had not violated the terms of his OSUP release. (Id.) Petitioner has not received an individualized hearing before a neutral decisionmaker to assess whether his detention is warranted due to danger or flight risk. (Id. ¶ 9.)

Petitioner is married to a U.S. citizen and has two minor children who are also United States citizens. (Id. ¶ 42.)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be

heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in their favor. Winter, 555 U.S. at 20. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction. Synopsys, Inc. v. AzurEngine Techs., Inc., 401 F. Supp. 3d 1068, 1075 (S.D. Cal. 2019) ("Given this opportunity for briefing, the Court will instead construe [plaintiff's] request for a TRO as a motion for preliminary injunction.").

### A.   Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights. (Application at 12-13, 17.) "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'" Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Under 8 U.S.C. § 1231, the "post-removal-period detention statute," there are two permissible goals for post-removal detention: "preventing flight" and "protecting the community." Id. Because flight risk is attenuated where removal is not possible and indefinite detention on the basis of protecting the community is allowed under only limited circumstances, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Otherwise, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690.

Furthermore, the Supreme Court has separately recognized that an individual on parole, which is analogous to an order of supervision, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens under orders of supervision. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Finally, it is well established that government agencies must comply with their own regulations. Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Here, the Government has promulgated two regulations to govern orders of supervision. ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8. C.F.R. § 241.4(l)(2). ICE officials must provide an individual whom ICE decides to re-detain with a copy of the decision "with the

reasons for the continued detention." 8 C.F.R. § 241.4(d). Subsequently, ICE must provide the noncitizen "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241(l)(1). Multiple courts have interpreted 8 C.F.R. § 241(l)(1) as requiring an informal interview when ICE revokes a noncitizen's order of supervision. See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands.").

Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal. Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001). ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). In the latter case, ICE must provide the noncitizen an "informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i)(3). Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.

Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a right to be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures.

The Government has indicated that it has no arguments in opposition to the Application. As such, on the basis of the Application, the Court determines that the Government is no closer to removing Petitioner than it has been for the more than two decades since Petitioner's order of removal was issued. (Application at 4, 9-12.) The Government therefore fails to demonstrate that removal is reasonably foreseeable sufficient to warrant a change in circumstances. (Id.) Furthermore, the Government has failed to provide Petitioner an informal interview to contest his re-detention as required by regulation. (Id. at 14.) Thus, the Court finds that Petitioner has met his burden of showing that there is "no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[1] "First, the private interest that will be affected by the official action; second, the risk of an

---

[1] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in the context of due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an extended period. Morrissey, 408 U.S. at 482. Here, Petitioner received his OSUP in 2012. (Bakhtiari Decl. ¶ 2.) Thus, ICE released Petitioner on an order of supervision for more than a decade. (Id.) Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during his re-detention and no rationale provided for his re-detention except for a Decision to Continue Detention, which states that Petitioner's flight risk determination is "based upon your immigration with an active final order of removal." (Dkt. No. 2-9.) But Petitioner had already been on OSUP for over a decade with the same order of removal and no other changed circumstances cited. The risk of erroneous deprivation is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." Zadvydas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here. The Government's previous decision to release Petitioner on an OSUP demonstrates that the Government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

**B.     Irreparable harm**

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their

families . . . , and [] collateral harms to children of detainees." Hernandez, 872 F.3d 976, 995 (9th Cir. 2017). Therefore, Petitioner faces irreparable harm.

**C.      Balance of equities and public interest**

Where the government is the opposing party, the balancing of the equities and the public interest merge. See Nken v. Holder, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm. Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release. See Grigorian, 2025 WL 2604573, at *10 (collecting cases).

Due to the minimal harm suffered by the Government, the Court will not require security.

**V.      CONCLUSION**

For the reasons described above, the Court **GRANTS** the Application. Accordingly, the Court finds Petitioner is entitled to a preliminary injunction and **ORDERS** the Government to release Petitioner from its custody immediately.

**IT IS SO ORDERED.**